The next case is Cherelle Fletcher v. City Of Madison. Shayla Fletcher is here for Appellant Fletcher. David Knoop is here for the City Of Madison and other appellees. And Ms. Fletcher, you may begin when you're ready. Thank you, Your Honors, and may it please the Court, Shayla Fletcher for the estate of Dana Sherrod Fletcher. The road to the dismissal with prejudice of the estate's claims was paved by abuses of discretion by the district court, ranging from outright refusal to comply with statutes and federal rules of civil procedure that place affirmative obligations to an apparent attempt to increase the pleading burden beyond what Rules 8 and 10 allow, to even denying the estate's motion to amend the complaint for no good reason under a rule that is very permissive. I would like to start in Part 1 by touching briefly on the estate's representation issues that the district court had an obligation to resolve before it dismissed the estate's claims. In Part 2, I'll discuss in more detail. Well, let me ask you this now. Are you a party to the lawsuit now as executor of the estate? Are you a party to it? I am a personal representative that was appointed before the lawsuit was filed. Cherelle was the only named personal representative. Before or after the notice of appeal was filed? So, I was named as a personal representative before the notice of appeal was filed. Okay. I have not yet been substituted. That is the purpose of the motion that I filed. So, you've got a pending motion before us to substitute out Cherelle. Is it Cherelle? Cherelle. So, to substitute out Cherelle and to substitute you in as the appropriate personal representative because there's, explain this to me. So, there was a probate judge, I guess, that removed Cherelle and put you as the only personal representative? So, we were co-personal representatives. There's a rule and a state statute that come into play here. The rule was Federal Rule of Civil Procedure 17B that required the district court to look at capacity issues when they appeared on the record. That happened before the final dismissal order with prejudice. The district court, instead of doing what Rule 17B required and looking at the capacity issues and resolving them before he dismissed the estate's claims, he, you know, snuck the dismissal order in when there was a void in. Well, I don't know about that. I mean, what do you mean by? So, you were representing, is it your sister-in-law? That's right. So, you were representing your sister-in-law and then she filed something pro se, which, I mean, courts strike all the time because we don't accept pro se filings when there's a lawyer involved. I mean, why didn't the district court just do exactly the right thing and say, look, I'm just going forward. I'm ignoring the pro se filing and we're just going to rock along. I don't even see how that hurts you if that's the case. Well, I mean, that's the very question I have is why didn't the court do the right thing? Because what would have happened at that point was in the district court before the final dismissal order even got entered, I would have been substituted in as the named representative. Yeah, but your position is we could still substitute you in now. So, why can't we just do that? But I'm responding to Judge Wilson's question about kind of the proceedings and how we got where we are. On the issue about whether the complaint was a shotgun pleading, I mean, it looks like a shotgun pleading to me. It's got, I don't know how many counts. Half of them are for declaratory judgments about the illegality of qualified immunity. Each count re-alleges all the facts in the previous counts. I mean, haven't we said that that's a shotgun pleading? No, I don't think so within meaning of Rules 8 and 10b. So, what the district court found in particular was that the complaint violated the second Wayland category, which was that the second amended complaint, quote, contained, end quote, facts not obviously connected to any cause of action. The complaint did not violate that rule for one because each count specifically identified by paragraph number the factual allegations that support that count. And that's all the connection that's required. Well, you know what the concern of the district court is. You got to match the claims in a separate counts of a complaint, right? Right. And so, one of the issues on appeal is whether the court abused its discretion by denying you leave to amend. If you were granted leave to amend, can you draft a complaint that satisfies the requirements of the rule? Well, I mean... And satisfies the judge's concerns if you were, assuming that it's a shotgun pleading, if we assume it's a shotgun pleading and you're given another opportunity to amend your complaint, can you draft a complaint and file a complaint that satisfies the concerns of the district judge? Sure, if the concerns are legitimate. I don't think that the concerns of the district court here are legitimate, and here's why. So, what the district court said was that the second amended complaint did not explain how certain allegations related to the causes of action. That's not a rule 8 or 10, excuse me, concern. I'm trying to help you here. Okay. You can't, if you were given another opportunity to amend the complaint, could you file a complaint that satisfies the concerns of the court? Yes, of course. So, but the requirements are that there has to be an explanation of what's required in order to satisfy the legitimate concerns of a court. And then a meaningful, that provides you with a meaningful opportunity to self-comply. And the district court here did not do that. So, this court has stated on many occasions that dismissing a complaint with prejudice on shotgun pleading grounds is essentially a two-step process. One requiring a replete order that meets certain requirements. This district court's replete order did not meet that requirement. What about another thing the district court said is that you just group all these police departments together. So, you've got the Madison Police Department, the Huntsville Police Department. And so, these people, these entities don't know what they're defending against. Could you address that? Sure, of course. So, the nature of the complaint is more so driven by the nature of the case law that has specified what must be alleged in a complaint in order to state a claim for certain causes of action. One of the burdens that I have to meet is that I have to allege deliberate indifference. And deliberate indifference requires showing either of a long history or pattern that put a department on notice that there needed to be some training. Or one can show deliberate indifference to even of a need to train arising from a single incident. And so, the allegations regarding the other police departments that intermingle with the city of Madison are notice requirements demonstrating deliberate indifference. So, they knew that they were operating in an environment that led to the constitutional violations alleged in the complaint. And despite having all that knowledge arising from police departments that they interchanged reports with. Okay, so I guess I'm just confused. So, you didn't sue the Huntsville Police Department, right? No, of course not. So, how do allegations about the Huntsville Police Department matter for the defendants that you did sue? Are you saying that they matter because like personnel went from one place to another or something like that? That's one of the bases. I mean, the 11th Circuit has already in one case that is cited in the briefing, you know, accepted that in certain circumstances, knowledge arising from incidents in other police departments can satisfy notice. I'm not trying to impose liability on Madison for anything that was done in the city of Madison. My argument is that those incidents provide notice of a need to train in a material way that led to the constitutional violation that's alleged in the complaint. Okay, I want to make sure I understand the timeline here. When the complaint was filed, it was on Sherrell's behalf, on her own behalf, for the minor daughter, and for Dana's estate. And you're seeking only to proceed on behalf of the estate. You're not trying to bring her claim. No. And you're not trying to bring the minor daughter's claim because there's no probate court order relating to you being the guardian of the minor daughter. That is correct. Okay, so I'm just trying to clarify. The only thing you're trying to do is, we'll get to the shotgun pleading issue, just who is trying to bring the claim, is you're trying to proceed for the estate. That is correct, solely the estate. Okay, so that's all we've got to concern ourselves with. Okay. At the time, and also time-wise, there was a first complaint. The district court said it was a shotgun pleading and gave you a chance to amend it. Is that correct? That is correct. And you amended it. He said it's a shotgun pleading and you amended it. That's right. And then you get the second amended complaint. You filed that too, right? That's right. And then the district court said, no, that's still a shotgun pleading. That's right. And dismissed it. That's right. Okay. Then, and that was before you had been substituted. In fact, the district court dismissed it, and then you filed a notice of appeal of that dismissal. That's right. Because you're the lawyer in the case. That's right. And we don't let people proceed per se. That's right. It's just breaches it. And then it was only after that that the probate court then substituted you. So at the time of the notice of appeal, Sherell was the name party, right? Yes, Sherell was the name party. The district, I mean, the probate court never substituted me. No, they took her off. That's right. Y'all were co-people, and they took her off afterwards. That's right. Okay. And so my question is, okay, so now you're on appeal here, and you've come and given us the probate court order. I'm assuming we could take judicial notice of that. That's right. Okay. The problem is, it was still, you were the lawyer for the estate. It doesn't really matter who was the name plaintiff then, because now we could take judicial notice and maybe substitute you there. We still got a dismissal for the shotgun pleading. So really what we got to decide is whether that dismissal on shotgun pleading was correct or not. Is that correct? Is that what you really want us to do? That's right. But if we say it's a shotgun pleading, it doesn't really matter who's the plaintiff. It's either Sherell or it's just you by yourself, right? That's if it were a shotgun pleading and he had a special medical conditions precedent to dismissing the case with prejudice under an 11th Circuit precedent. I mean, if it was a shotgun pleading, even the second time, doesn't matter whether they substitute you or not, it's still a shotgun pleading if that was correct. So what I'm saying is that I'm entitled to a sufficient opportunity to amend the complaint. But you already had one opportunity. That's literally the point of the argument, is that the replete order did not satisfy the requirements of the 11th Circuit to open the door to a dismissal with prejudice on shotgun pleading grounds. The 11th Circuit has been clear that a replete order has to identify what the problems are, explain how to fix it, and then allow an opportunity to amend. And that's not the replete order.  But he gave you an opportunity to amend. Not after he explained the problems. You're saying the first order didn't explain? The first order did not explain anything. Okay. I'll have to go see the first... Explained, but didn't give an opportunity to amend. Okay. All right, so I've got the order of the first dismissal. Let's see. So you're saying that was... Well, what he says it's a hallmark pleading. Right, there was a one-sentence pronouncement. That this violates at least the third ruling category. That was all the analysis that he gave to the matter. It said, file a complaint that does not violate the shotgun pleading rules. Later on, after that amendment, he files his final dismissal order that identifies two additional categories for the first time, explains what he claims the problems were, using a burden that's beyond what is required by Rules 8 and 10. And I think presents an opportunity for this court to clarify that. But, so he raises the pleading burden and then dismisses the complaint without providing an opportunity to fix the problems that he identified for the very first time in his final dismissal order. And so, what is your best case for why this first order didn't go far enough by identifying it as shotgun pleading and citing several cases that explaining a shotgun pleading? What was your best case? Well, I mean, I had a strength site of all of them, you know, of a lot of them that talked about the kind of analysis that district courts are expected to engage in when they are dismissing or considering the dismissal of a case that is a shotgun pleading. So, there's Vought-Micro, the Whelan case. I mean, the list goes on. He cited the Whelan case in his order. Which blew my mind, because I'm like, the Whelan case is the very case that demonstrates what you're supposed to do in a replete order, which is exactly what the district court did not do. So, he was aware that he had an obligation to enter a sufficient replete order and didn't do so. Okay. I understand your argument now. Thank you. Sure. All right. Thank you, Ms. Fletcher. Mr. Knupp. Good morning, May it please the Court. I'm David Knupp. I represent the City of Madison and the other apologies. I'd like to address four topics this morning. Whether an attorney can file an appeal contrary to the explicit wishes of the party the attorney represents. Second, whether Rule 43 applies when the correct parties were not before the district court, and when the party to be substituted before the district court made a voluntary decision to stop litigating. Third, whether the district court could ever be held to have abused its discretion when it dismissed a shotgun complaint after giving a counseled plaintiff three different chances to file a different lawsuit. And fourth, whether alternative grounds that were not even brought up in the appellant's brief and have not been argued today would have required affirmance even if all of the other issues were not before the court. The first question is whether the appeal is properly before the court. The record shows that when opposing counsel filed this appeal, she did so contrary to the written and oral instructions of her client who was the sole plaintiff before the district court. All right. So I have a couple of problems with that argument that I'd like to discuss with you. One is that that seems like an issue for the bar to look at and not for us to evaluate whether the filing was appropriate. Because for the most part, when an attorney files something on our docket on behalf of their client, we just rock along. We don't look to see whether the client authorized it, didn't want to do it, whether there was a termination of the relationship, whatever. Why would we do something different here? Your Honor, I would point to Rissell v. Marcello. It's a case that we cited in our brief. It's a 2020 decision. It says when an appeal is taken on behalf of someone without legal authority to do so, the appeal should be dismissed. The court has said that on several occasions. So was that about the court? Was that explained? What are the facts of that? Because I read that, but I can't remember it. I think a separate entity was involved. Right, yeah. So it wasn't a situation where there was a client attorney anger at each other. It was where there was an entity that had no right to appeal, right? So you're not saying the plaintiff here had no right to appeal? I am. Oh, the plaintiff had no right to appeal the judgment against her? Why is that? For this reason, the plaintiff did not appeal. The notice of appeal in this case states that it is filed by the attorney of record. The only ability- Wait a minute, I'm going to stop you there. The plaintiff couldn't have appealed, per se. We wouldn't have let her represent the estate or even the child. The law- let's get some fundamentals here. You can't appeal for an estate, per se. Do you agree with that? You have to have an attorney. I agree with that, Your Honor. And the same thing, I looked at the law on guardians. So that's where I started with. You got Cheryl's claim, you got the minor daughter claim, and you got the estate claim. We have all three, right? She can appeal. That lawyer can appeal. And in fact, Cheryl could not appeal. She could not sign an appeal. Her letter has no effect on us. Your Honor, I don't necessarily disagree, except that I think we need to clarify that opposing counsel did not even purport to file the appeal on behalf of Cheryl Fletcher. Well, she said, I looked at that notice of appeal. It's very odd. I agree. I mean, it was cleverly lawyered. But it just says like, I'm counsel of record, and I appeal. And the reason it was done like that was to try to take advantage of Rule 43, which is the substitution rule. But this Court held, and it's very clear law, this Court has held in the Silberman case, that the substitution rule only applies where you have the proper parties before the district court. Yeah, but that's a substitution on appeal. Can't substitute an appeal after a dismissal, okay? Whether or not there was a timely file notice of appeal is not about whether we can now substitute or whether we have to vacate and remand in light of that. You agree we can take judicial notice of the probate court order, right? We have no objection to the court looking at the probate order. Okay, and I've got Silberman right here. It's just saying when you're up on appeal, you can't just substitute some party. And that's precisely the issue, because again, opposing counsel is trying to do the game. How is that, though? I don't understand, because you had, I mean, let's just assume that this, obviously there's something going on here, which we've had no fact findings about, and I just don't want to speculate. But let's just assume that there was just a disagreement about strategy, that that's what's going on here. But let's say it wasn't that. Let's say that Sherrell died, right? A personal representative of the estate is pursuing the litigation while the appeal is pending. The personal representative dies. Then the probate judge says, well, because of the death of that personal representative, we're going to have a new personal representative. We substitute that new personal representative in all of the time. That's a completely admissible- How is that different? How is that different than this? But very different scenario. So I've cited cases from this court, plus also the second, third, seventh, ninth, and D.C. circuits that say that when you make a voluntary decision to stop litigating as a plaintiff in the district court, that is not something that allows substitution. But that's got nothing to do with a pro se party who can't even file in the district court to begin with, okay? It's not, they don't discuss, I've looked at those cases. They don't really get into the pro se, and you have to have a lawyer, and the lawyer files the notice of appeal. And then the person writes this. I do think that the client still has agency, and certainly with their lawyer has the ability to- I'm not questioning about that. Like you said, it's for the bar. I mean, how do we know what's really going on? Let me mention this one other thing, and I do want to move on. Go back. Are any of those cases pro se cases where the pro se, see, it'd be different if it was just for herself. This is an estate case in the guardian. I know in the district court, I wouldn't let somebody come in. I always want a lawyer there. Where's the guardian funds going? Where's the estates going? I never deal with the child. I'm not going to deal with the child. I'm not going to deal with the- There are a few cases under Rule 43. This court's cases that I think would be very relevant in addition to Silverman would be the Glickstein versus Sunbank case that's been cited. I don't know that I've found a pro se case. I will mention one other thing before moving on. See, that's the whole thing. The pro se cases matter because the pro se can't come up here and tell us what's going on. We have to go with the lawyer or a guardian of a child. I agree that this court is required to ignore a clear dereliction of duty by the attorney on behalf of their client. I will mention this before moving on. The appellant's- I mean, how do we factor in? Didn't Sherrell's letter say, I want to drop out of the case, but I don't have any problems with Shayla continuing on this case on behalf of the estate? She said that to this court outside the appellate deadline. She never said that to the district court. But we can look at her letter. We can look at her letter. It's on the record. Well, right. But that goes back to the fact that we didn't have two personal representatives before the district court. Alabama law, Stone versus Jones, requires that two representatives bring the action collectively, jointly, unanimously. The fact that there was only one plaintiff below is a serious dispositive problem. But did you move to dismiss on that grounds? No. Your Honor, we are aware. I'm not. So why does it matter? Why do you even bring that up now? It's got nothing to do with it. Could you move to whether this is a shotgun pleading? Because, I mean, there's something like 22 counts. I've read it a couple of different times. And I feel, I'm not 100% sure it is a shotgun pleading. But I feel for the district court trying to deal with what exactly is going on here. It's 53 pages. It's over 252 separate allegations. Listen, I disagree with a lot of what I heard in terms of critiques of the district court. And one reason I'll point out is three complaints were allowed. We moved to dismiss every complaint on shotgun pleading grounds. This court in Jackson versus Bank of America. I'm looking at the Second Amendment complaint. All you have to do is just admit or deny each of the 200 allegations, or say, without sufficient information to form a belief as to the veracity. Respectfully, we've been instructed by this court never to do that, but to take a shotgun pleading and to move to strike it or to file a more definite statement motion. And in this case, we moved to dismiss each iteration of the complaint. We provided in each brief, Her primary argument is the court says it's a shotgun pleading, but it failed to explain why this is a shotgun pleading. Where do we, isn't that what this record reflects? It does not, Your Honor. It reflects that not only did the district court point specifically to Weiland, which is the controlling case, but we provided over nine pages of briefing on every Weiland category on multiple iterations of the complaint. We had a meeting where we discussed it. The district court provided additional notice, and this court in Jackson versus Bank of America, this is the key case. This is the case that's dispositive. In Jackson, this court held that the notice of the shotgun pleading issue does not have to come from the district court, but can come from the defendants. We repeatedly, extensively explained everything that was wrong with this complaint. What's the name of that case? It's Jackson versus Bank of America, Your Honor. And I can give you the citation as well. It is page 98, that's third, 1348. And it specifically holds that a defendant's brief can put the plaintiff on notice. That's at page 1358. And Your Honor, if I could go through a few of the reasons. I mean, for one thing, we have three of the four categories here. The second... Let me just tell you one concern. I'm looking at the second amended complaint, and it's styled Sherelle Fletcher versus the City of Madison and other defendants. Shouldn't she be given an opportunity to make the appropriate adjustments if it's going to be Shayla Fletcher versus City of Madison rather than Sherelle Fletcher versus the City of Madison? Well, no, Your Honor, because we've had the same lawyer involved in the beginning. We've had three different versions of the complaint. We have different parties. We have a different party now. But there's nothing different at all about the allegations. And so it's just two representatives. But if you looked at paragraph 44 of the complaint, Judge Brasher mentioned it earlier, that's the second wild category. It talks about these vague and immaterial facts about two other law enforcement agencies that have nothing to do with the City of Madison. That claim, frankly, paragraph 44 doesn't even belong in the complaint, but it's incorporated into seven different counts, not against the City of Madison, but against these fictitious defendants who also shouldn't be in the complaint. So the district court looks at counts 4, 5, 6, 9, 19, 20, 24, and says, what does this paragraph 44 even mean? Frankly, I have the same question. If you look at counts 18 and 23, those are the two counts that are actually really left in this case against the City of Madison. They don't include a single factual allegation regarding the altercation at issue in this case. There's not a single fact that's been incorporated in that complaint that talks about what happened. Instead, you have all of these amorphous allegations about practices and customs. You have talk about sister agencies. If you look at the third wild category and stick with count 18, that's the count against the City. I'm counting at least six different claims by three different plaintiffs all in one count. That's exactly what the district court pointed out in its repleter order. It said you've grouped claims together. And it still does that. She submitted, opposing counsel submitted to the district court a third version of the complaint for the court to analyze and it actually did analyze it. It didn't fix that problem. And so the court found that it was futile. If you look at count 23, again, we have three plaintiffs with separate claims of municipal liability all arising from different conducts, different injuries, all in the same count. Now, if we look at the fourth wild category, you have multiple claims against multiple defendants without saying which defendant is responsible for which act. You have count 19. It's asserted against five fictitious defendant officers. They're all accused of vastly different things, but they're in the one count. Did you discuss all this at your meeting with the plaintiff? Not only that, Your Honor. We also briefed this in each iteration of the complaint. Who was at the meeting? I mean, I found it a little strange that the district court would have the plaintiff's counsel and the defendant's counsel to get together to draft a proper complaint. I've never seen that before. It's not our favorite practice. It's common in the Northern District, Your Honor, because it's difficult for us to give guidance. Essentially, what we do is give a copy of the brief that we've already filed. I was present. Ms. Fletcher was present. One of my colleagues, Allison Chandler, was present. If you look at the fourth wild category, it's even worse than I said. Was the district court judge there? No, Judge Burke was not present, Your Honor. He directed you to do that to see if you could figure this out, all right. I'll say encourage plaintiff's counsel to meet with other lawyers who would be able to provide that advice. I think Judge Burke certainly was trying to give every opportunity he could. It's worse, though, under the fourth wild category. We've got a large number of defendants who are named in the complaint and incorporated into counts, but were never sued. Mayor Paul Finley of the city, Chief David Jernigan, and every member of the city council is listed as a defendant. It says they're a defendant. There's not a single count asserted against them. That's undisputed. And yet, those allegations related to them are incorporated into all of these counts that relate to fictitious parties. So if I could quickly, in the minute I have left, mention one other thing. I do have Jackson v. Bank of America. You said it has a holding that the defendant's brief can give notice of what all the problems. And you said it was 1348, and I'm trying to find that. I believe it's at 1358, Your Honor. And I can't quote it for you exactly, but I believe you got it. I'm at 1358. It talks about notice being provided by the defendants. Okay, I'll read it. Go ahead. There's one very important thing that we need to cover before I'm done, if I could. We have made a number of arguments in the district court and on appeal that were never responded to. No one ever appealed these determinations, and there's been no reply brief filed. Really, the only claim left at this point, after the dismissal of all these other plaintiffs, is the Minnell claim against the city and the state law claim against the city. The Minnell claim is woefully insufficient. It does not allege any prior custom by the city of Madison. It only talks about sister agencies who, under binding 1983 law, have nothing to do with the city of Madison. It literally doesn't name or have any count against Mayor Finley, Chief Jernigan, or the council members, so they're just not included. And if they were, we argued qualified immunity and legislative immunity. And finally, the fictitious defendants simply aren't allowed in federal court. This court held in Dean v. Barber that if you do, the only exception that allows a fictitious defendant is if it's so specific as to allow service like the chief deputy of the Madison County Jail. But that's never been alleged here, and so we move to strike those fictitious defendants. No one has briefed any of that except for us. Those arguments have all been forfeited. All of them give rise to affirmance of the district court's decision. And so I appreciate your time. I would ask the court to take a look at those arguments that never did get responded to. I believe that certainly an affirmance is in order. There's no abuse of discretion by the district court here, and I appreciate the court's time. All right. Thank you, Mr. Canut. Ms. Fletcher, you've reserved some time for rebuttal. I have. So first, I'll start off with the idea that I never responded to the arguments about the dismissal of fictitious defendants. There was extensive briefing about that. I think that that's even a bit beyond the scope of what we're here for on appeal today, but I did want to point that out. To the extent that there's an analogy to the death of a plaintiff, I'm going to say that the capacity issue that was brought before the court below is tantamount to the death of the plaintiff. She no longer had the capacity to act on behalf of the estate. She simply became a non-factor when she put on the record facts demonstrating that she had a personal conflict. So we don't have to guess about what the nature of her desire to not pursue litigation was. She put it on the record herself, as she did here. So she removed herself as competent to serve as a personal representative. Regardless of what she could have done with respect to her individual claims, she simply did not have the capacity under state law to dictate, solely on the basis of a personal conflict, the termination of estate claims when there was another beneficiary. So that argument fails. I'll also note that in terms of this meeting that was ordered, was said and the complaint was filed, let's be honest, if the defendants themselves drafted the complaint, they would still be here arguing that it was a shotgun pleading. So I want to read a direct quote from their briefing, their brief in support of the motion to dismiss the City of Madison's claims against them. Going to run out of time here. It says that the plaintiff's reference to a constitutionally protected right not to comply with officers does not implicate any constitutional right guaranteed by the Fourth Amendment or anywhere else in the Constitution. They're saying that an innocent person doesn't have a right not to comply and that is not guaranteed by the Constitution. When you're in a 1983 case, you're not going to rely on any statements made by somebody whose position is that contrary to loads of federal law. Shouldn't some of these defendants not be in the complaint like City of Madison and some of these other administrative defendants should not be in this complaint? No, they absolutely should. Supervisory liability. Now, what he's referring to is the fact that in the second amended complaint and in my attempt to make unspecified revisions to the complaint that the district court said needed to be made, including indiscriminately deleting 14 pages for no apparent reason, I inadvertently omitted the supervisory liability claim. That was the subject of my motion to file the third amended complaint was to reassert the supervisory liability count. All the allegations that supported that claim were still in the complaint. I had just inadvertently deleted that from the second amended complaint. So the third amended complaint, proposed third amended complaint, was intended to reinsert that count against those defendants. All right. I think we have your argument, Miss Fletcher. The court will be in recess for 15 minutes. All rise. I'm going to get up some pressure. You've got more? Yeah. I mean, you can. I'm going to take it away from you. That's fine.